UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL, II,

           Plaintiff,           Civil Action No. 20-11114

v.                                  Judith E. Levy
                                     United States District Judge

SHERMAN CAMPBELL, *et al.*,        David R. Grand
                                     United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 68), AND TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 72)

*Pro se* plaintiff Robert Annabel, II ("Annabel"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against MDOC employees Sherman Campbell, Christina Bates, Stacey Ream, and Brian Evers (collectively, "Defendants"). (ECF No. 1). The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 23).

On April 21, 2023, Annabel filed a motion for summary judgment (ECF No. 68), which has been fully briefed (ECF Nos. 69, 74). On May 19, 2023, Defendants filed their own motion for summary judgment (ECF No. 72), which has also been fully briefed (ECF Nos. 75, 76).

The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time. *See* E.D. Mich. LR 7.1(f).

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Annabel's Motion for Summary Judgment **(ECF No. 68)** be **DENIED**, and Defendants' Motion for Summary Judgment **(ECF No. 72)** be **GRANTED**.

II.     **REPORT**

    A.     **Brief Factual Background**

Annabel is an MDOC inmate who, at all relevant times, was confined at the Gus Harrison Correctional Facility ("ARF") in Adrian, MI. He brings this § 1983 civil rights action, alleging violations of his rights under the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq*. ("RLUIPA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). Following the Court's prior rulings, Annabel's only remaining claims in his operative amended complaint are (1) his First Amendment free exercise and RLUIPA claims against Defendants, and (2) his First Amendment retaliation claim against defendant Ream based on her issuance of an "Insolence" misconduct report for protected speech.

The Court previously detailed the relevant allegations in Annabel's amended complaint as follows:

> . . . Annabel alleges a series of events stemming from his assignment to a weekly work detail during the Sabbath by Corrections Program Coordinator Christina Bates ("Bates") in September 2019, which allegedly violated his religion and led to his filing a grievance. (ECF No. 18, PageID.132-33). As a result, Annabel asserts that, "in a conspiracy to continue the violations of [his] free exercise rights," Warden Sherman Campbell ("Campbell"), [] Grievance Coordinator Stacey Ream ("Ream"), [and] Assistant Deputy Warden Brian Evers ("Evers") . . . subjected him to a series of retaliatory "harassment and corruption" through "malicious effort[s] to obstruct the grievance process" by

2

"falsely reject[ing]" his grievance and "threaten[ing] to retaliate if [Annabel] continued to file grievances." (*Id.*, PageID.133-35). . . .

Specifically, Annabel alleges that his "religion is a form of Christianity that observes the weekly Sabbath [from] sundown Friday to sundown Saturday," during which "no work must be done, nor wages received." (*Id.*, PageID.132). However, in September 2019, Bates allegedly "assigned [Annabel] an on-grounds maintenance work detail" for "Fridays and Saturdays." (*Id.*, PageID.132-33). After several "failed attempts" to "exchange" his scheduled workdays during the Sabbath with his usual days off on "Wednesdays and Thursdays," Annabel "wrote a grievance." (*Id.*, PageID.133). According to Annabel, "[t]here was no legitimate penological interest or even a compelling governmental interest behind denying his request." (*Id.*).

Starting from this point, Annabel allegedly became the target of a "conspiracy to continue the violations of [his] free exercise rights." (*Id.*). He alleges that, in "a malicious effort to obstruct the grievance process," Ream and Evers "falsely rejected the grievance at Step I" without addressing it "on the merits," even though he "clearly followed the grievance policy." (*Id.*). Ream and Evers "also threatened to retaliate if [he] continued to file grievances by placing him on Modified Grievance Access for 3 months." (*Id.*, PageID.133-34).

When Annabel appealed "the grievance to Step II," Campbell allegedly "changed the obviously false rejection to a new false rejection for non-grievable issue, claiming that Plaintiff has no religious rights under MDOC policy or the Constitution." (*Id.*, PageID.134). He then appealed "the grievance to Step III," at which point Russell "upheld the malicious rejection that the issue was non-grievable and that Plaintiff had no religious rights." (*Id.*). Annabel alleges that, throughout "2019 and 2020," Campbell and Ream "began another campaign of retaliatory harassment by falsely rejecting any grievance alleging unconstitutional conditions, . . . [and] repeatedly threatened Plaintiff with Modified Grievance Access." (*Id.*, PageID.135).

Annabel further alleges that, when "the harassment and corruption continued," he sent a kite to Ream on April 17, 2020, stating, "You are a very corrupt defendant," which he contends was a "true statement of both Campbell and Ream as protected speech." (*Id.*). In response, Ream issued Annabel a "Class II Insolence misconduct charge," violating his "right to criticize her for being corrupt and that such was being litigated." (*Id.*). [Sergeant] Houser reviewed the misconduct ticket on April 20th, but despite Annabel's explanation that the ticket "was retaliation for protected speech, not insolence," Houser failed to "quash the ticket" and instead stated that "Campbell and Ream would write more tickets if he continued to complain or file grievances." (*Id.*, PageID.136).

3

. . . On April 24th, [Resident Unit Manager] Thomas held a misconduct hearing and, with "retaliatory motive and intent," found Annabel guilty. (*Id.*). Annabel then filed "a misconduct appeal," which Campbell "denied [] personally." (*Id.*).

\* \* \* \* \* \* \* \* \*

Based on the above allegations, Annabel sues the Defendants "in their personal capacities for alleged violations of the Constitution, but in their official capacities for RLUIPA [] claims." (*Id.*, PageID.132). . . . Annabel seeks, among other relief, monetary damages, and injunctive relief to stop being forced to "work or accept wages on the Sabbath days" and to "expunge the 'Insolence' charge" and waive the related sanctions stemming from that charge. (*Id.*, PageID.139-40).

Annabel and Defendants have now filed cross motions for summary judgment. For the reasons discussed below, the Court finds that Defendants are entitled to summary judgment on all of Annabel's claims against them.

### B.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

<u>1. RLUIPA and First Amendment Free Exercise Claims</u>

At the heart of this case is Annabel's claim that Defendants unconstitutionally infringed on his "rights to freedom of religion by attempts to force him to work and accept wages on the weekly Sabbath days from sundown Friday to sundown Saturday."[1] (ECF No. 68, PageID.583). Defendants argue that Annabel "fails to state a RLUIPA claim" because he "did not allege a substantial burden" on his religious beliefs, and for the same

---

[1] While Annabel makes a passing reference to "sundown Friday" in his complaint, there is no evidence in the record that he was ever assigned or ordered to work after "sundown" on Fridays, and the only issue appears to be whether he was required to work on Saturdays.

5

reasons, also "cannot establish that any Defendant violated his First Amendment rights." (ECF No. 72, PageID.843; ECF No. 69, PageID.725).

RLUIPA provides "expansive protection" for prisoners' religious liberty. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015). Indeed, "[c]ourts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment." *Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020). Analysis under RLUIPA is a "three-act play." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). First, the inmate must demonstrate that he seeks to exercise religion out of a "sincerely held religious belief,"[2] and second, the inmate must show that the government "substantially burdened that religious exercise." *Id.* If the inmate satisfies the first two steps, the burden shifts to the government to show that (1) the imposition of the substantial burden on an inmate's religious exercise was "in furtherance of a compelling governmental interest," and (2) it used "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2); *Fox*, 949 F.3d at 282.

In determining what constitutes a "substantial burden" on religious exercise, the Sixth Circuit has stated that prison officials who place "substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or 'effectively bar' his sincere faith-

---

[2] Defendants mention in passing that "[a]rguably, [Annabel's] complaint does not establish the necessary facts regarding his religious belief[s], or that the beliefs are sincerely held . . ." (ECF No. 72, PageID.829). Instead, they argue that "one thing is certain – [Annabel] was not forced to work in violation of those beliefs." (*Id.*). While the Court need not formally address whether Annabel established that observing the Sabbath day of rest is a requirement of his religious beliefs, it is worth noting that "[s]o long as the practice is traceable to a sincerely held religious belief, [] it does not matter whether the inmate's preferred exercise is 'central' to his faith." *Haight*, 763 F.3d at 559-60 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), and 42 U.S.C. § 2000cc-5(7)(A)).

6

based conduct ... [] necessarily place a substantial burden on it." *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (citing *Hayes v. Tenn.*, 424 F. App'x 546, 555 (6th Cir. 2011), and *Living Water Church of God v. Charter Twp. of Meridian*, 285 F. App'x 729, 739 (6th Cir. 2007)). "In the 'Free Exercise' context, the Supreme Court has made clear that the 'substantial burden' hurdle is high and that determining its existence is fact intensive." *Living Water Church of God*, 258 F. App'x at 734. (". . . Congress has cautioned that we are to interpret 'substantial burden' in line with the Supreme Court's 'Free Exercise' jurisprudence, which suggests that a 'substantial burden' is a difficult threshold to cross.").

To determine whether Annabel has presented sufficient evidence of a "substantial burden" to his religious exercise, it is necessary to first determine the actual "burden" Defendants imposed on his ability to observe the Sabbath day of rest. As best as can be discerned, Annabel's claim is that Defendants substantially burdened his religious requirement to rest on the Sabbath day by *scheduling* him to work on Saturdays for ground maintenance duties, even though he is prohibited from working or accepting wages on the Sabbath. However, even viewing the record evidence in the light most favorable to Annabel, the evidence is undisputed that Annabel was never actually ordered or required to work on a single Saturday during the relevant period, and that each time, when he asked not to work on the Sabbath based on his religious beliefs, he was promptly excused with permission. Annabel makes this clear in his own deposition testimony:

> Q: Okay. ***So you did work on some Saturdays?***
>
> A: ***No; no. I asked to be excused. I was granted leave to be excused.***
>
> Q: Okay. So when you say you would be excused, would you arrive

to work and then ask to leave?

A: ***Basically they would call me out of my cell. I'd go up to the base and I would ask the officer not to work that day because of my religious beliefs and they'd say, "Okay. That's fine." And they let me go back to my cell*** . . . So I didn't get in a trap like I could have got into.

* * * * * * * * * *

Q: Okay. . . . So each [] Saturday you would go through the same process. You would go to work, ask to be released for your religious beliefs and they'd say, "Okay," and you went back to your cell?

A: ***I wouldn't – I wouldn't have to come out unless they called me out.***

Q: Okay. ***And there were some Sabbaths that they didn't call you out?***

A: ***Most time they didn't call me out because they didn't have no work for me; right?*** I mean, there's no reason why I was required to have that day assigned when most of the time there wasn't any work to do anyhow.

(ECF No. 69-2, PageID.740-41) (emphasis added).

Moreover, to the extent Annabel's claim is based on the premise that he *could have* been issued a misconduct ticket or otherwise punished for refusing to work on his scheduled workdays, the evidence establishes that he was always excused without reprimand when requested:

Q: [] Now, as far as this work assignment goes, I think the way your Complaint reads [a]s if you actually did refuse to work on the Sabbath; is that correct?

A: ***There's a couple of times I refused to work, but I wasn't written a ticket for it. They understood and gave me the option again***. . . .

(*Id.*, PageID.740) ("I'd go up to the base and I would ask the officer not to work that day

8

because of my religious beliefs and they'd say, 'Okay. That's fine.' And they let me go back to my cell . . . So I didn't get in a trap like I could have got into."). Indeed, he makes clear in his own motion for summary judgment that he was never actually *ordered* to work on Saturdays. (ECF No. 68, PageID.595) ("Had Plaintiff refused an order to work on the Sabbath *(fortunately the order never came)*, he would have been issued a Class II misconduct charge...") (emphasis added). Annabel also fails to present any evidence that he was ever actually reprimanded to any extent, or actually threatened with a misconduct ticket, for not working on the Sabbath.

As to Annabel's contention that his claim is "twofold" because he was also being "forced to accept wages" on the Sabbath, such contention is conclusory as he presents no *evidence* demonstrating that he was actually paid for work that he admits he was excused from and had never performed. The Court notes that MDOC Policy 05.03.150 ¶ AA makes clear that "[p]risoners released from a work or school assignment to attend group religious services or holy day observances *will not be paid for their absence from the assignment*" (ECF No. 69-3, PageID.746) (emphasis added), and Annabel presents no evidence that this policy was not followed with respect to the Sabbath days he did not work.

Based on all of the foregoing undisputed evidence, Annabel failed to raise a material question of fact that his merely being *scheduled* to work certain Saturday assignments meets the "high" threshold of establishing that Defendants "substantially burdened" his ability to observe the Sabbath day of rest. Again, Annabel was never ordered to work on such days, and never actually did work on such days. At most, Annabel showed that being scheduled for certain Saturday work assignments was a "mere inconvenience" on his

9

religious exercise, which falls far short of the "substantial burden" he was required to show to advance his RLUIPA claims. *See Living Water Church of God*, 258 F. App'x at 739 (stating that a "substantial burden" must place more than a "mere inconvenience" on religious exercise); *see also Haight*, 763 F.3d at 565.

Accordingly, Defendants are entitled to summary judgment on Annabel's RLUIPA claims. And, because summary judgment should be granted on his RLUIPA claims, it follows that summary judgment should be also granted for Defendants on Annabel's First Amendment Free Exercise claims, as "[c]ourts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment." *Fox*, 949 F.3d at 277; *see Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) ("The constitutional protection afforded under § 1983 is less strong, however [than RLUIPA]."); *Smith v. Li*, 599 F. Supp. 3d 706, 709-10 (M.D. Tenn. 2022) ("Congress enacted RLUIPA to ensure greater protection for religious exercise than is available under the First Amendment.").[3]

---

[3] It is also worth noting that, aside from defendant Bates who was responsible for assigning Annabel to work on Saturdays, Annabel failed to present evidence that the remaining Defendants were directly involved in managing his work assignments. Instead, Annabel faults them for denying his grievances on the issue or otherwise failing to act. Specifically, Annabel asserts that Ream and Evers "attempted to cause the ongoing religious violation to continue by falsely rejecting two of Plaintiff's grievances," and that Campbell "rejected the first grievance as a non-grievable issue." (ECF No. 68, PageID.595). Such allegations are insufficient to state a § 1983 claim, however, because the "mere denial of a prisoner's grievance states no claim of constitutional dimension," and because "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *Mitchell v. Caruso*, No. 09-11467, 2010 WL 727742, at *4 (E.D. Mich. 2010) ("[a] defendant is not liable under § 1983 when his or her only action was to deny an administrative grievance."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (the "'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'"); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Thus, Annabel's RLUIPA

2. First Amendment Retaliation Claim against Defendant Ream

Annabel next argues that he sent Ream a kite requesting a Step II appeal form and stating: 'You are a very corrupt defendant,'" and that Ream "retaliated by issuing [him] a misconduct charge under a vague and capricious application of a rule against 'Insolence.'" (ECF No. 68, PageID.598). A prima facie case for First Amendment retaliation involves three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The record evidence reflects that, on April 16, 2020, Annabel sent a kite to Ream stating, in its entirety, "You are a very corrupt defendant. I demand a Step II Appeal form for ARF/20/04/701/272." (ECF No. 69-7, PageID.776). Ream subsequently issued Annabel a Class II misconduct report for "Insolence" based on the following reason: "Annabel [] sent a kite to me that stated, 'You are a very corrupt defendant[.]' This statement was made to harass and degrade this writer." (ECF No. 68-1, PageID.698). A misconduct hearing was subsequently held, during which Annabel argued that calling Ream "very corrupt" in response to her "corrupt grievance practices" was protected conduct, and that he would not have been issued the misconduct report if he "hadn't used the word 'defendant' to place Ream on notice that [he] filed a lawsuit against her . . ." (*Id.*,

---

and Free Exercise claims against Defendants other than Bates would also fail as a matter of law in this regard.

11

PageID.700). Hearing Officer Thomas ultimately found Annabel guilty of "Insolence," determining that "[t]he word defendant is not the word that caused the writer to feel degraded or harassed but the word 'corrupt' instead. This derogatory statement is a deformation of the writers [sic] character and fit the definition of Insolence. I find the writer's statement credible." (*Id.*, PageID.699).

In his motion, Annabel argues that Ream's issuance of an "Insolence" misconduct report in response to the above kite constituted unlawful retaliation against his protected speech "to complain that Ream was corrupt and that she was a defendant in a lawsuit."[4] In her own summary judgment motion, Ream argues that she is entitled to qualified immunity on Annabel's retaliatory misconduct ticket claim against her because Annabel failed to establish that her issuing him a valid "Insolence" misconduct report pursuant to MDOC Policy for his use of "insulting" and "derogatory" terms to "simply attack[] [her] character"

---

[4] To the extent Annabel argues that Ream issued him a misconduct report in retaliation for his notifying her that he was *filing a lawsuit* against her by calling her a "defendant," such claim would fail because he does not present evidence that would create a material factual question that Ream's issuance of the "Insolence" misconduct report was motivated by his filing a lawsuit rather than his calling her "very corrupt." *See, e.g.*, *Edwards v. Valdez*, No. 1:22-CV-1059, 2023 WL 2674195, at *4 (W.D. Mich. Mar. 29, 2023). As detailed above, the salient misconduct documents in the record consistently establish the precise reason that Ream issued Annabel a misconduct report for "Insolence," which is that she believed he called her "corrupt" for no other reason than to degrade and harass her. Ream provides an additional affidavit corroborating that reason, elaborating that she issued the "Insolence" misconduct report because his statement "calling [her] corrupt" served "no valid purpose" other than to "degrade or harass" her because such statement "was not attempting to resolve an issue," was not "asking [her] to clarify why [she] rejected his grievance," or was not even "expressing his belief that he felt [she] was repeatedly or falsely rejecting his grievances." (ECF No. 69-6, PageID.769). Annabel fails to provide any evidence disputing Ream's proffered reasons such that it would create a material factual question as to whether Ream issued him the misconduct report for a different reason altogether, *i.e.*, based on his notifying her of a lawsuit by calling her a "defendant" in his kite to her. Annabel's own self-serving speculation as to Ream's motives is insufficient. *Alexander*, 576 F.3d at 558.

was a constitutional violation, much less a violation of clearly established law. (ECF No. 72, PageID.832-41). After careful review, the Court agrees that Annabel failed to meet his burden to show that Ream's issuance of a misconduct report for "Insolence" in response to him calling her a "very corrupt defendant" amounts to a violation of clearly established law.

In *Lockett v. Suardini*, an inmate raised a similar First Amendment retaliation claim, arguing that he was unlawfully retaliated against for calling a MDOC officer a "foul and corrupted bitch," which he asserted was protected speech "under the public-concern test." *Lockett*, 526 F.3d 866, 868-71, 874 (6th Cir. 2008). In affirming the district court's grant of summary judgment on behalf of the MDOC, the Sixth Circuit explained that it need not address the "open question" of whether the "public-concern test" applied to speech by prisoners because it was well established that a prisoner who violates a legitimate prison regulation is not engaged in protected conduct:

> Lockett admits that he called Hearing Officer Maki a "foul and corrupted bitch." The threshold question is therefore whether that comment was "protected conduct" under the first prong of the *Thaddeus-X* test.
>
> MDOC contends that Lockett's comment was not protected because it constituted "insolent" behavior in violation of MDOC's disciplinary regulations. Lockett did not respond to this argument, asserting instead that his speech was protected under the public-concern test. MDOC correctly notes that whether the public-concern test determines the protection to be afforded a prisoner's speech is an open question in the Sixth Circuit. In *Thaddeus–X*, this court sitting *en banc* specifically refused to make a "determination about the appropriateness of explicitly applying the public-concern limitation to speech by prisoners." Nor do we need to decide that issue here, because the court held in *Thaddeus-X* that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one"

13

> of the three-step retaliation analysis.
>
> MDOC Policy Directive No. 03.03.105 provides that "insolent" behavior is a "major misconduct" violation. Such behavior is defined as "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee." Lockett's comment that the hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding. It thus falls well within the definition of "insolence" under the MDOC Policy Directive. Accordingly, Lockett's First Amendment claim fails as a matter of law because his comment to the hearing officer was not protected conduct under *Thaddeus–X*.

*Lockett*, 526 F.3d at 874 (citations omitted).

In Annabel's instant case, MDOC Policy Directive 03.03.105 likewise classifies "Insolence" as a Class II Misconduct defined as "[w]ords, actions or other behavior, which is intended to harass, degrade or cause alarm in an employee," such as "[u]sing abusive language to refer to an employee" or "writing about [] an employee in a derogatory manner." (ECF No. 69-8, PageID.796). While Annabel's statement to Ream was not as vulgar as the comments made in *Lockett*, his calling Ream "very corrupt" was similarly "derogatory, and questioned her authority as well as [her] integrity" and "thus falls well within the definition of 'insolence' under the MDOC Policy Directive." *Lockett*, 526 F.3d at 874. As the Sixth Circuit determined in *Lockett*, Annabel's First Amendment claim here fails as a matter of law because his comment to Ream was not protected conduct under *Thaddeus-X*. *Id.*

Annabel's primary reliance on *Wilson v. Greetan*, 571 F. Supp. 3d 948 (W.D. Wis. 2007), and *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002), as establishing clearly established precedent of a constitutional violation is misplaced. (*See* ECF No. 68,

PageID.597-98; ECF No. 75, PageID.897-99). First, both *Wilson* and *Brown* were issued *before* the Sixth Circuit's published decision in *Lockett*, which made clear that, while it was an "open question" in the Sixth Circuit whether the "public-concern test" applied to speech by prisoners, a prisoner's speech violating the MDOC's Policy on "Insolence" is "not protected conduct under *Thaddeus–X*." [5] *Lockett*, 526 F.3d at 874. Second, *Wilson* is an out-of-circuit district court case with no precedential authority that would call into question the Sixth Circuit's holding in *Lockett*. *See Siggers v. Alex*, 2023 WL 5986603, at *4 (6th Cir. Sept. 12, 2023) ("In evaluating the state of the law . . . we consider Supreme Court and Sixth Circuit precedent."). Finally, *Brown* is factually distinguishable from Annabel's case, as *Brown* did not involve the use of derogatory speech resulting in a charge of "Insolence," but rather involved an inmate's complaints notifying prison officials of the alleged embezzlement of inmate funds, for which the inmate was charged with "interference with the administration of rules." *Brown*, 312 F.3d at 785.

In short, the Sixth Circuit in *Lockett* affirmatively held that speech qualifying as "insolent" in violation of MDOC Policy was not protected conduct under *Thaddeus-X* as a

---

[5] Subsequent caselaw in the Sixth Circuit has continued to follow this same principle. *See, e.g.*, *Griffin v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014) ("[T]o the extent that Griffin invokes the Free Speech Clause, the general rule—that a prison inmate's speech is not protected by the First Amendment if it is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"—governs his claims"); *Annabel v. Michigan Dep't of Corr.*, 2018 WL 3455407, at *17 (W.D. Mich. July 18, 2018) ("The Sixth Circuit has recognized that behavior that violates prison rules is not conduct protected by the First Amendment."); *Stradley v. Michigan Dep't of Corr.*, 2015 WL 6758826, at *4 (W.D. Mich. Nov. 5, 2015) ("Plaintiff's insolence toward[] [officer] Blake was not protected conduct"), *aff'd*, No. 15-2537, 2016 WL 11848704 (6th Cir. Aug. 30, 2016); *Edwards*, 2023 WL 2674195, at *3 ("[C]ourts have held that a prisoner's act of calling an officer an offensive name or making other offensive statements toward an officer does not constitute protected conduct.").

15

matter of law, and it otherwise declined to address the "open question" of whether the public-concern test applied to prisoner speech. *Lockett*, 526 F.3d at 874. Annabel, who bears the burden to overcome qualified immunity, fails to point to any clearly established holding of the Supreme Court or Sixth Circuit recognizing that a prisoner calling an officer a derogatory name is protected conduct, such that the officer's subsequent issuance of an "Insolence" misconduct report as defined under policy would clearly constitute an unlawful act of retaliation violating the First Amendment. *See Beaton v. City of Allen Park*, 2015 WL 3604951, at *10 (E.D. Mich. Jun. 8, 2015) (stating that a plaintiff bears the burden to show "a constitutional right was violated and that the right was clearly established at the time of the violation.") (quotations omitted).

Accordingly, defendant Ream is entitled to qualified immunity on Annabel's retaliatory misconduct claim against her, and such claim should be dismissed.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Annabel's Motion for Summary Judgment **(ECF No. 68)** be **DENIED**, and Defendants' Motion for Summary Judgment **(ECF No. 72)** be **GRANTED**.

Dated: September 26, 2023             s/David R. Grand
Ann Arbor, Michigan                    DAVID R. GRAND
                                       United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 26, 2023.

    s/Eddrey O. Butts  
    EDDREY O. BUTTS  
    Case Manager